Citation Nr: 1703137 
Decision Date: 02/02/17 Archive Date: 02/15/17

DOCKET NO. 10-48 562 ) DATE
 )
 )

Received from the
Department of Veterans Affairs Regional Office in New York, New York


THE ISSUES

1. Entitlement to service connection for a lumbar spine disability, other than spina bifida occulta.

2. Entitlement to service connection for a cervical spine disability.

3. Entitlement to service connection for a right shoulder disability.

4. Entitlement to service connection for a left shoulder disability.

5. Entitlement to service connection for a left knee disability.


REPRESENTATION

Veteran represented by: Disabled American Veterans



WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

L. Pelican, Associate Counsel


INTRODUCTION

The Veteran served on active duty in the Army National Guard in August 1970 and in the Air Force from May 1972 to May 1977. The Veteran was awarded the National Defense Service Medal and Air Force Good Conduct Medal, among other decorations. 

This case comes before the Board of Veterans' Appeals (the Board) on appeal from a December 2008 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Columbia, South Carolina. The case was subsequently transferred to the VA RO in New York, New York.

Based on the statements of the Veteran, as well as the medical evidence of record, and in light of the holding in Clemons v. Shinseki, the Veteran's claims for service connection have been recharacterized as noted above. 23 Vet. App. 1 (2009) (holding that when a Veteran makes a claim, he is seeking service connection for symptoms regardless of how those symptoms are diagnosed or labeled).

With respect to the Veteran's back disability claim, an explanation of the procedural history is warranted. In June 1977, the Veteran filed a service connection claim for a right hand disorder and a nervous stomach disorder. In developing the Veteran's claims, the RO afforded the Veteran a VA examination in July 1977, during which the Veteran was diagnosed with spina bifida occulta of the 5th lumbar segment and 1st sacral segment. In a December 1977 rating decision, the RO denied entitlement to service connection for spina bifida occulta. The Veteran did not appeal that decision and it became final. 

In January 2008, the Veteran filed a claim for degenerative disc disease of the cervical and lumbar spines. He also wrote that he had filed a claim for a back condition in 1977 though no evidence for the claim existed. In a March 2008 Veteran Claims Assistance Act of 2000 (VCAA) letter, the RO informed the Veteran that he had been previously denied service connection for spina bifida occulta in a December 1977 rating decision, and that he was required to submit new and material evidence to reopen his claim of entitlement to service connection for a back disability. However, the December 2008 rating decision did not address whether new and material evidence had been received to reopen the spina bifida claim, and instead adjudicated the lumbar spine disability claim on the merits. The claim was treated in the same manner in the September 2010 Statement of the Case (SOC) and in subsequent actions by the Board in March 2014 and April 2015.

In a January 2016 brief submitted to the Court of Appeals for Veterans Claims (the Court), the Veteran's representative asserted that a claim of entitlement to service connection for spina bifida on an aggravation basis was reasonably raised by the evidence of record, and cited the July 1977 VA examination report in support of that contention. See January 2016 Appellant Brief, pp. 20-23.

The Board is aware of the Court's holdings in Boggs v. Peake, 520 F.3d 1330 (Fed. Cir. 2008) (holding that a claim based upon a distinctly diagnosed disease or injury has a different factual basis, and as such, cannot be considered the same as a previously decided claim that was based upon another diagnosis or injury) and Velez v. Shinseki, 23 Vet. App. 199 (2009) (holding that if a new claim is not based upon a diagnosed disease or injury that is distinct from a claim previously considered, then VA must evaluate whether the evidence submitted since the last final decision on that claim tends to substantiate an element of a previously adjudicated matter). In this regard, the Board finds it pertinent that in his January 2008 claim, the Veteran specifically identified degenerative disc disease as the subject of the claim, but also noted that he had filed a claim for a back condition in 1977. The Veteran stated that he must have had some issues with his back at that time, and that his degenerative disc disease "was probably in its initial stages." 

Degenerative disc disease is a distinct diagnosis from spina bifida occulta. The former is characterized as an anatomic condition that includes the narrowing of the intraspinal (central) canal, lateral recess, and / or neural foramena. See LUMBAR SPINAL STENOSIS: TREATMENT AND PROGNOSIS, https://www.uptodate.com/contents/lumbar-spinal-stenosis-treatment-and-prognosis?source=search_result&search=degenerative%20disc%20disease%20adult&selectedTitle=4~52 (last visited January 30, 2017). The latter is characterized as the failure of fusion of the vertebral bodies due to abnormal fusion of the posterior vertebral arches, with unexposed neural tissue. See CLOSED SPINAL DYSRAPHISM: CLINICAL MANIFESTATIONS, DIAGNOSIS, AND MANAGEMENT, https://www.uptodate.com/contents/closed-spinal-dysraphism-clinical-manifestations-diagnosis-and-management?source=search_result&search=spina%20bifida%20occulta&selectedTitle=1~16 (last visited January 30, 2017). 

Although the Veteran asserts that he filed a claim for a back condition in 1977, the June 1977 VA Form 21-526 does not show the Veteran put forward a claim for any disability relating to his back. Nevertheless, the July 1977 rating decision denied entitlement to service connection for spina bifida occulta. 

Given these facts, the Board finds that the Veteran's claim for entitlement to service connection for lumbar spine disability is properly characterized as an original claim. However, the Board further finds that in his January 2008 claim the Veteran was also petitioning to reopen a claim for spina bifida occulta. As the December 2008 rating decision did not address the issue of whether new and material evidence has been received to reopen a claim of entitlement to service connection for spina bifida occulta, that matter must be referred to the Agency of Original Jurisdiction (AOJ) for an initial determination.

In October 2013, the Veteran had a hearing before the undersigned Veterans' Law Judge. A transcript of that proceeding has been associated with the claims file.

The Veteran's case was remanded for additional development in March 2014, specifically to afford the Veteran a VA examination for his claimed orthopedic disabilities.

An April 2015 Board decision denied the Veteran's service connection claims. The Veteran appealed the decision to the Court. In an August 2016 Memorandum Decision, the Court vacated the April 2015 Board decision and remanded the case for further proceedings.

The issue of entitlement to service connection for a right knee disability was raised by the Veteran in May 2009, and referred by the Board to the AOJ in the March 2014 remand and April 2015 decision. Review of the record subsequent to the Board's April 2015 referral suggests no action has been taken on that matter. As noted above, the Veteran's representative raised the issue of whether new and material evidence has been received to reopen a claim of entitlement to service connection for spina bifida occulta; however, the AOJ has not adjudicated that petition. See January 2016 Appellant Brief, pp. 20-23. Therefore, the Board does not have jurisdiction over these matters, and they are referred to the AOJ for appropriate action. 38 C.F.R. § 19.9(b) (2016); see 79 Fed. Reg. 57,660 (Sept. 24, 2015) (codified in 38 C.F.R. Parts 3, 19, and 20 (2016)). 

The appeal is REMANDED to the AOJ. VA will notify the Veteran if further action is required.


REMAND

The Veteran essentially contends that any currently diagnosed lumbar spine, cervical spine, right and left shoulder, and left knee disabilities are the result of his military service, to specifically include his duties as a firefighter in the Air Force. See, e.g., January 2008 claim, May 2009 statements, June 2014 statement, and December 2014 statement.

In its August 2016 Memorandum Decision, the Court concluded that the Board failed to sufficiently consider several matters. First, the Court found that the Board did not address the Veteran's contentions regarding the adequacy (or lack thereof) of the May 2014 VA examination, specifically the assertions of bias, lack of requisite expertise on orthopedic issues, and inadequate consideration of the Veteran's duties as a firefighter during service. The Court also found that the Board failed to address or determine how rigorous the Veteran's duties were, and stated that establishing just what those duties were was "material to obtaining a proper medical opinion." Memorandum Decision, pg. 2. Further, the Court took issue with the Board's assignment of greater weight to the May 2014 VA examiner's opinion over the positive opinions of record, observing that the basis for doing so was unclear given the assertions of the Veteran and the evidence of record. 

The Court directed the Board to determine the scope of the Veteran's firefighter duties, and provide that information to, and obtain a nexus opinion from, an orthopedic specialist, or explain why such an opinion is not needed to properly decide the claims. Memorandum Decision, pp. 3-4. 

With respect to his duties as a firefighter, the Veteran asserted that the duties were strenuous and physically demanding and included fighting fires, executing rescues, and handling hoses and very large ladders, among other equipment. The work also involved extracting pilots from burning aircraft. See January 2008 claim and October 2013 Hearing Transcript, pp. 8-12, 20-24. The May 2014 VA examiner's consideration of these duties was cursory, and the underlying rationale for the opinion is unclear.

Given the assertions of the Veteran and his representative, and as the Court has called into question the adequacy of the May 2014 VA examination report, the Board finds a remand is warranted to afford the Veteran a new VA examination with an orthopedic surgeon.

To assist the examiner in providing the requested opinions and fulfill the instructions of the Court's Memorandum Decision, the Veteran's personnel records should be obtained as they may provide additional insight into the nature and frequency of the Veteran's firefighter duties.

The Board also notes there are inconsistencies in the evidence of record. The Veteran and his wife have asserted that the Veteran did not go to sick call for fear of adverse consequences on his firefighting career, but that he reported his orthopedic pain during his discharge examination. See January 2009 statement from the Veteran's wife, May 2009 statement from the Veteran, and October 2013 Hearing Transcript, pg. 9. However, the Veteran's claims file contains over 90 pages of service treatment records that document his treatment for a variety of ailments including upper respiratory infections and skin conditions. The number of documented occasions in which the Veteran sought care during the relevant period of service is inconsistent with the assertion that he did not go to sick call. Additionally, on his January 1977 discharge report of medical history, the Veteran denied symptoms of painful shoulder; recurrent back pain; bone, joint, or other deformity; and trick or locked knee. The Veteran also wrote that his present state of health was "good," and signed the document. The Veteran's contemporaneous physical examination indicated his spine and extremities were clinically normal. These separation documents conflict with the assertion that the Veteran reported his orthopedic difficulties upon discharge from service.

This case is further complicated by the post-service medical evidence of record. An October 2001 record from Dr. J. G. indicates the Veteran reported at least a 10 year history of chronic neck pain, and a diagnosis of mild degenerative disc disease of the cervical spine was indicated. A May 2005 VA medical record indicated that the Veteran reported chronic neck and back pain, which had been exacerbated by a fall in March 2005. Further, according to August 2005 records associated with the Veteran's claim for state disability benefits, he reported neck and back pain dating to the early 1980s. The records indicated the Veteran sustained a series of falls on ice while working for the Postal Service which resulted in a herniated disc, which continued to bother him. See August 2005 New York State Department of Temporary or Disability Assistance records.

In November 2016, the Veteran submitted a positive nexus opinion from Dr. W. G. Preliminarily, the Board observes that the fax transmission of the report cut off portions of each page of the document; thus the copy of record does not represent the complete report from Dr. W. G. Nevertheless, Dr. W. G. explained that the Veteran's claimed disabilities were more likely than not related to his service work, and degenerative injuries resulted from his service occupation and training. Dr. W. G. explained the fact that the Veteran was able to work for the Postal Service after discharge from the military spoke to his pain tolerance and his desire to continue gainful employment. Dr. W. G.'s opinion did not address the aforementioned inconsistencies of record. Additionally, the opinion did not address the Veteran's left knee claim. For these reasons, additional medical clarification is required.

On remand, the Veteran should be afforded an examination with an orthopedic surgeon to determine the nature and etiology of his claimed cervical spine, lumbar spine, shoulder, and left knee disabilities.

Accordingly, the case is REMANDED for the following actions:

1. Obtain the Veteran's service personnel records from his service with the Air Force from all appropriate sources, including but not limited to the Veteran's unit and the National Personnel Records Center (NPRC) or the Records Management Center (RMC) as well as any other appropriate repository. 

2. Take appropriate action to obtain VA treatment records not already of record relating to the Veteran's claimed disabilities. If VA is unable to obtain these records, the Veteran must be notified of this fact and all efforts to obtain them must be documented and associated with the claims file.

3. With appropriate authorization from the Veteran, obtain and associate with the record any outstanding private treatment records identified by him as pertinent to his claims. Also request that the Veteran resubmit a complete copy of Dr. W. G.'s November 2016 opinion.

4. Next, schedule the Veteran for a VA examination, performed by an orthopedic surgeon, to determine the nature and etiology of any diagnosed cervical spine, lumbar spine, shoulder, and left knee disabilities. The claims file must be made available to the examiner for review in connection with the examination. All indicated tests should be conducted and the reports of any such studies should be incorporated into the examination report to be associated with the claims file.

Based on the review of the Veteran's claims file and examination of the Veteran, the clinician is asked to opine on the following:

a. Identify any diagnosed cervical spine, lumbar spine, shoulder, and left knee disabilities present since approximately January 2008.

b. For any cervical spine, lumbar spine, shoulder, and left knee disabilities diagnosed, state whether it is at least as likely as not (a probability of 50 percent or greater) that each diagnosed disability is caused by or related to service, to include the Veteran's duties as a firefighter.

In rendering the requested opinions, the examiner should discuss the Veteran's reported in-service duties, including fighting fires, rescues, handling hoses and very large ladders, among other equipment, and extracting pilots from burning aircraft. See January 2008 claim and October 2013 Hearing Transcript, pp. 8-12, 20-24. The examiner should also address any references to these duties contained in the Veteran's service personnel records, if they are successfully obtained.

The examiner should also address any relevant post-service medical records, including but not limited to October 2001 records from Dr. J. G. noting the Veterans' reported 10 year history of chronic neck pain; the May 2005 VA medical record noting the Veteran's reported chronic neck and back pain, which had been exacerbated by a fall in March 2005; and August 2005 New York State Department of Temporary or Disability Assistance records, in which the Veteran reported neck and back pain dating to the early 1980s.

Additionally, the examiner should reconcile his or her opinions with the October 2009 opinion from Dr. G. K.; the May 2013 opinion from A. E., N.P.; the September 2013 opinion from D. P., P.A.-C.; and the November 2016 opinion from Dr. W. G.

The rationale for all opinions expressed must be provided. If the examiner is unable to offer any of the requested opinions, it is essential that the examiner offer a rationale for the conclusion that an opinion could not be provided without resort to speculation, together with a statement as to whether there is additional evidence that could enable an opinion to be provided, or whether the inability to provide the opinion is based on the limits of medical knowledge. See Jones v. Shinseki, 23 Vet. App. 382 (2011).

5. Review the examination report to ensure that it complies with the Board's remand directives. Any inadequacies should be addressed prior to recertification to the Board.

6. After ensuring that the requested actions are completed, the AOJ should conduct any other development actions deemed warranted and readjudicate the claims on appeal. If any benefit sought is not fully granted, the AOJ must furnish a Supplemental Statement of the Case before the claims file is returned to the Board, if otherwise in order.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

These claims must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



_________________________________________________
MICHAEL A. PAPPAS
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2016).